JOSEPH E. DONOVAN *vs.* GERTRUDE M. SULLIVAN & others.

Suffolk.    October 7, 8, 1936. — November 30, 1936.

Present: RUGG, C.J., PIERCE, FIELD, & LUMMUS, JJ.

*Probate Court,* Jury issues.    *Unsound Mind.*

Evidence, merely of conduct of a woman decedent consistent with the fact that she was a believer in Spiritualism, did not require the framing of a jury issue as to her testamentary capacity.

PETITION, filed in the Probate Court for the county of Suffolk on April 15, 1935, for proof of the will of Catherine W. Warden, late of Boston.

Motions by the contestants for jury issues were heard by *Dillon,* J., and were denied. The contestant Gertrude M. Sullivan appealed.

*H. L. Burnham,* for Gertrude M. Sullivan.

*G. D. Boynton,* (*H. W. Jarvis* with him,) for William T. Sullivan.

*P. M. Finan,* for the petitioner.

LUMMUS, J. This is an appeal by a contestant of two instruments purporting to be wills of Catherine W. Warden, from the denial of motions for jury issues as to due execution and testamentary capacity. Only the latter issue is now pressed.

Catherine W. Warden died April 10, 1935, aged between sixty-eight and seventy-five years, leaving as heirs a brother, two sisters, and the five children of a deceased brother. Two instruments purporting to be wills were filed, one dated October 4, 1929, and the other dated September 15, 1931. In the later instrument one sister was given $1,000, the other $500, and the brother $500 and a selection of household furniture. Many small bequests were made to relatives, friends and charities. The net value of the estate is less than $5,000, a sum not quite sufficient to pay the legacies in the later will, much less those in the earlier will.

The decedent lived alone, took care of her own house and of her business affairs, drew checks, and went to her safe deposit box regularly, until her last illness. Her counsel was appointed conservator upon her petition a few days before she died. On October 1, 1929, she had collapsed at the North Station in Boston, and after being treated at the Relief Hospital had been at the City Hospital until October 18, 1929. Her trouble was diagnosed as high blood pressure, arteriosclerosis, and arteriosclerotic psychosis. The record of her discharge read as follows: "Admitted fifteen days ago complaining of an attack of weakness of the legs and left arm which overcame her as she was waiting in the North Station for guests scheduled to arrive through spirit messages from her deceased husband. Outside of visual and auditory hallucinations of visitations from her husband, the patient seemed normal mentally. . . . After a two weeks' rest she left. Discharged relieved." On December 2, 1929, two of her nieces, now contestants, filed a petition to place the decedent under guardianship as insane, but no appointment was made. As a preliminary to that proceeding, three physicians examined the decedent, one chosen by her counsel, one by the then petitioners, and the third by the two thus chosen. The physician selected by the then petitioners expressed the opinion that the decedent was insane, but later joined the other two in a contrary opinion.

The contestants rely upon the facts that the decedent believed that she was in frequent communication with the spirits of her deceased husband and nephew, and shortly before October 1, 1929, signed the name of her deceased husband to a letter which contained a message from him which she believed was being communicated through her. In view of her belief in Spiritualism, these facts do not require the granting of the motion. Taken by themselves, beliefs as to the spiritual and the supernatural that seem strange to people of other views, are hardly evidence of insanity.

*Orders denying issues affirmed.*